All right, the next argued case is number 19-2142, LookIT Oy v. Bank of America Corporation. Mr. Cole. Thank you, Your Honor. May it please the Court. We presented three issues in this appeal, and we believe in all three. The crucial questions for this Court to address are ones of substance. And I'll start with the claim construction issue, and we believe that an examination of the substance of this invention, the substance of these claims, and the role, in particular, of the service provider element played in these claims, demonstrate that the District Court's decision to ignore the plain and ordinary meaning of that term in favor of an alleged definition in the spec was incorrect and should be reversed. I'll be second. This is Judge Loring. Yes, Your Honor. You talk about an alleged definition. It looked pretty expressed to me, and I find it difficult not to think that this is a frivolous appeal. Under the description of the invention, it states, the patent states, the invention relates to, and it states, the booking system in accordance with the invention. And then the next paragraph, it defines what service providers are, and then says, as used in this application, the mediator is. How better a definition can one expect than expressly what the patent discloses? Your Honor, the service provider term does not actually include the word the invention. It simply says the service providers are. It's in the paragraph under the description of the invention. That's correct. And below that, it continues by talking, as Your Honor mentioned, about as used in this application. And what you see here is both the District Court and Bank of America assuming that the application term means this patent application, as opposed to what we contend. It means this application of the invention in the context of a booking system. And one point I should make here that was not in our brief that I noticed late before oral argument, if you look in the same section, Appendix 75, Column 3, under the title Brief Description of the Drawings, this is further support for our position. It says, quote, in the following section, the following section is the one Your Honor just referred, description of the invention. In the following section, the invention will be described in detail by the aid of a few examples of its embodiments, which is our position here. And that statement at the beginning, which points to the section Bank of America leans on, is then bookended at the end of the specification by a paragraph that we pointed to in our brief that mentions the foregoing being examples of embodiments and not the entirety of the invention. So we don't believe... Both examples relate to a booking system. I'm sorry, both examples... I apologize, Your Honor. Both examples of what? Both examples in the patent relate to the booking system. Example one is a preferred booking system. There is no non-preferred booking system, and there's no system other than a booking system. Correct me if I'm wrong. There is a preferred booking system, but simply because there's a preferred embodiment does not mean the preferred embodiment cannot be a subset of another embodiment that is not necessarily preferred and is broader than the preferred embodiment. The question here is... Where is there another embodiment? The specification talks about a booking system. There's an example of the booket system. There's an example of the dynamic dialogue matrix at the end. And as I mentioned, there's every indication in the specification that that section is talking about the use made of the invention. And one other point I would make on that in this decision here is, as you know, as we pointed in our brief, the definition of service provider taken from the spec includes the concept of a customer's intent, what the customer wants. And while that could be theoretically proper, I would submit that the fact that the definition refers to the state of mind of someone using the system is a strong indicator that that is talking about the use made of the invention itself. And I also think, Your Honor, it's very important to look at the claims and what role the service provider provides in the claims, because this court does regularly look to the substance of the invention in assessing these arguments. This is a test that is considered under the standard of a person of skill in the art. It is not a grammar test per se, although we certainly look to the language included there. And if you look at claim one, for example, you will see service provider actually does nothing. It is simply something to which an inquiry message pertains. So if someone of skill in the art is reading these claims, which we believe is the proper place to start the analysis, there is no indication or no confusion that they would suffer in reading the term service provider as to whether this is just a provider of services or something different. There's no technical aspect to that term. It's not technical at all. As we pointed out, it has nothing whatsoever to do with the inventive aspects of this invention. The invention disclosed is a novel system to communicate between a service provider and a customer with a mobile device or other device. And the fact that that service provider element plays no substantive role in the claims and no substantive role in the inventiveness of the claim is an important clue that we should be very careful in attempting to ignore the plain and ordinary meaning in favor of a definition from the specification. And again, the specification here does not even say in the present invention the service provider is X or is defined as Y. And as I indicated too, the specification contains indications that that is an embodiment. And even if it's the only embodiment, even if the court concludes that, that still does not tell you anything meaningful about whether it's proper here to import that into the claims. Okay. I will turn now to the third issue, actually, unless there are other questions about the claim construction. The... This is Judge Gold. Just asking one question for my own clarification. You've been discussing the specification language on page 75 of the Joint Appendix starting with line 55 in column 3. It says, the service providers are those with whom clients want to make appointments, reservations, or other bookings and comprise the resources for the correct... What exactly is resources a reference to? I think resources is a reference to, for example, if you take one of the disclosed examples would be an airline ticket. I think what it means is the service provider has the seats on the plane that would be allocated according to the invention. Okay. And when you say allocate, the service provider would allocate in the sense of providing them to the client? Correct. That's correct. Now, and I will point out, interestingly enough, there's actually another section of the specification, page 79, column 11. It's in the middle of a hypothetical text exchange according to the invention you can see here. It is actually an airline example. One of the examples around page, excuse me, line 23 talks about a meal selection, vegetarian, beef, or chicken, which is not the kind of, quote-unquote, reservation you would normally think of like an airline ticket or a movie ticket or something like that. That's an example from the specification. But this would be a resource. A resource. That's correct, a resource. This is a resource that's allocated. I guess you can debate. The question of allocation is a little unclear there. I think you could say it's allocated, but if you believe that's allocated, it is difficult to understand how other product or service purchases would not be an allocation. I mean, two years ago, no one would think toilet paper was something that was scarce enough that it needed to be allocated, but depending on the circumstances, it can be. And this goes to our major point, which is the limitation here is problematic substantively because it basically talks about the identity and the types of products or offerings or services offered by an element in the claims that does nothing, affects nothing. And if you were to literally take the court's claim construction and apply it, one could argue that this meal example on the airline falls out because that's not a reservation, that's a purchase of a product, a beef or a chicken or a vegetarian meal. And that doesn't make sense. And that's why, again, we have to look at the substance of the invention, and that is an important clue on the propriety of applying lexicography. And it's an even more important part to consider in Bank of America's second argument where it simply notes that the concept of booking is discussed extensively throughout the patent. That's true. But the question is, it's appropriate to import that into service provider limitation only if it could be shown to be a clear, deliberate, meticulous definition, a disavowal, which there's no argument about at all, or something that at least goes to the very heart of the invention here as opposed to something that is tangential like what we have. You answered my question that I had about the resources. Thank you. I didn't want to divert you from the other point you wanted to move on to. No problem. Thank you, Your Honor. That's fine. I guess the second one I'll talk about, it's a three-order chain, as we pointed out in our brief, that led to this result. And the result being we were thrown out of court despite the district court never once reaching the merits here. And I'm going to focus on the last link in that chain right now, which is the court's order that struck expert reports that we provided where we attempted to show why, notwithstanding the service provider limitation that we disagree with, that nonetheless, Bank of America's use fits within that language. The problem with what happened here is the district court appears to have been under the misimpression that its order on the amendment of contentions addressed and disposed of the question of whether this particular concept, the concept that what Bank of America does qualifies as a booking. The district court seems to have misunderstood and thought that it addressed that issue in the order on amending contentions. But that is incorrect. You can read that order beginning to end, and there is absolutely nothing in it that addresses that question at all. And then when the court struck the expert reports, the entirety of the court's analysis was, I already struck that thing. That was a theory. I found it was a theory, and I struck it. But that order does nothing of the sort. And the district court did not do, and Bank of America does not offer a standard to say how does one decide if a particular concept is, in fact, a new infringement theory, as they contend, or alternatively, an explanation of how and why the original theory applies in view of the construction that was made. That's our position. We, I see my, I'm going to do a rebuttal, so I will stop. No, finish your thought. Okay, thank you, Your Honor. Yeah, how do you decide that? We show the standard we believe is correct, that the infringement contentions themselves, in particular, the identification of where that limitation is met, that is what sets the theories. And our evidence is consistent with our original theory, not inconsistent. It is consistent with it, and that means it's a proper application, not a new theory. Thank you. Okay, any questions at the moment for Mr. Cole? No, no. All right, thank you. Then we'll hear from the other side. Mr. Lombardi. Thank you, Your Honor, and may it please the court. I'll start with claim construction. The patent clearly indicates that the invention relates to booking systems and defines the claim terms expressly in terms of booking systems. The section of patent that Judge Lurie referred to is the place where the terms are defined. There is a structure to the paragraphs right under the description of invention. It starts with what the invention is. It then lays out what the components of the invention are in paragraph two, when it says the booking system in accordance with the invention. And then in the third paragraph, again, which Judge Lurie referred to, service provider and mediator are defined. That is a definition. It's a clear definition. It tells those reading the patent exactly how to read the term service provider and mediator going forward and throughout the patent and the claims. The entire specification indicates that this patent is about booking systems from the title, which is booking method and system through each section of the specification. It is about booking systems. It's about booking systems in the embodiments. The answer to the question, I believe it was Judge Lurie's question, is that all embodiments in the patent are about bookings. The invention here is bookings. The embodiments are examples of particular types of bookings or appointments or reservations that are included within the general definition of bookings. And so everything about this patent teaches that it's about bookings and that service provider and mediator is about bookings. As to the section that counsel referred to and that was not argued in the briefs, which is under the brief description of the drawings at column three, all that section does is lay out what the figures are and note that those figures are going to be discussed later in the context of discussions of the embodiments. And that's exactly what happens. After the terms are defined and the invention is defined, there are embodiments. Those figures are discussed after that, beginning at column four at line 27. And so what counsel points to, newly points to, in the brief description of the drawings, excuse me, does not change the analysis. In fact, it confirms the analysis because the invention is defined first, the claim terms are defined first, and then the examples are defined. Mr. Lombardi, Judge Shaw here. I have two questions if I could, please. The first one is just, it doesn't relate to claim construction or anything about what we've been talking about, but what exactly is, I'm trying to understand from my own knowledge, what exactly is the accused product or system here that the bank has, Bank of America has? Well, it changed over time, Your Honor. It started with three different things and it ended up being one, which was a system for the bank communicating with a customer about whether there was a fraud, for instance, in the account. And so it was communications back and forth between the bank for those purposes. Had nothing to do with a booking or a reservation or an appointment. And it was never covered by the scope of the invention here or the definitions of the invention here. Okay. My second question relates to, I guess, the second point that Mr. Cole got into about the judge's ruling striking the expert reports. And if I understood what he was saying correctly, he said that the judge misunderstood his previous orders, the 3-6 and the 3-7 orders with respect to infringement contentions and improperly struck the expert reports. That's what I understood he was saying. What is your response to that? Well, my response, Your Honor, is that the district court understood very well what had happened and understood very well what he was doing. What happened was that Bookett amended their contentions late. Those amendments were stricken properly. And then when they tried to reassert the stricken theory in the expert reports, the district court would not let them do that, which was appropriate, Your Honor. The district court, as this court is well aware, has the authority to set up patent rules. They are important case management tools. They are designed to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases. And in this particular district, you are to do that early. And the unsuccessful in amending their contentions, they tried to do an end run around what the court had done by putting those contentions into the expert reports. And when they did that... Excuse me. How did these contentions exactly... I'm sorry. How did these reports exactly key into the contentions that had been not allowed? Probably the easiest way to see that, Your Honor, is the amended contentions referred to a reservation engine. Reservation engine is not a term in the patent, but it was a term they came up with for their contentions. And you see that in the amended contentions at page 85161, for example. They also, in a letter sent to us right around the time of the filing of the amended contentions, referred to the reservation engine theory, which is at A6631. And that reservation engine theory is... A6631 and thereafter, Your Honor. But that's where it starts. And it says there that in their new contention, that Bank of America acts as the mediator and service provider of the asserted claims by providing a reservation engine for booking or reserving financial resources such as money or credit. And then it talks about credit card blocks and credit card concepts that are nowhere in the patent, but that was the contention they set forth, and it was ultimately struck. Then the expert reports, which are part of the record, there were two experts at issue, Your Honor. One was Shamos, and the report is at A6216 to 6233, specifically references this hold or reservation of credit or funds and refers to that specific concept, the reservation engine concept. And the Kapanen report is at A6240, and the relevant pages are A6242 to 51. Again, talks about the reservation of available credit and or funds in connection with payment card transactions. And so the reservation engine theory, which was brand new to the amended contentions, was repeated in the expert reports. And that was how they tried to get around what happened with the amended contentions. Now, there's been some argument made that actually this reservation engine theory wasn't new, but that's belied by the facts here, Your Honor. They thought they had to amend the contentions in order to state their reservation engine theory. And in fact, they stated in filing a brief trying to get further discovery in the case on the new reservation engine theory, they conceded it was a different theory. They said they were seeking discovery on their new theory, not their old theory. And that admission is at A5364. It's a brief that Bookett filed. He said, Bookett does not contend... 5364? Yes, A5364. It says there, Bookett does not contend that the new topics, meaning the new topics in the 30B6 contentions, have any basis in the original contentions. Instead, these new 30B6 topics properly relate to Bookett's amended infringement contentions. And so... Mr. Lombardi, Judge Lorry here. Getting back to Judge Strahl's question about the particular system of Bank America that's being accused, is it not correct that that issue was not before us here because there was a stipulated judgment of non-infringement? That is correct, Your Honor. Given the rulings on claim construction and the rulings on the amended contentions and expert reports, Bookett stipulated to dismissal of the action and here we are on appeal as a result. That is correct, Your Honor. And the court has considered striking expert reports in this manner and has done so most recently in the Figenics case. Figenics case was a case where this court held that there's no abuse of discretion in striking expert opinion on infringement where narrowing of infringement theory was not disclosed in operative contentions. The court ruled that you can't get around this by providing a very broad contention the first and then a narrower contention later. And it noted in coming to this conclusion that the purpose of the contentions is to provide notice of the infringement theory so that you can prepare for trial. It is the case, Your Honor, that we apply an abuse of discretion standard here and that this court gives broad deference to a district court's enforcement of local patent rules. And this district court certainly had the authority and the ability to police the contentions that were required in this case and to ensure that both parties were given proper notice as most importantly in this instance Bank of America was given proper notice of the contentions in the case so the case could be properly litigated along those lines. It was not an abuse of discretion for the district court to strike the portions of the expert reports that related to the new theory. And that's one further point I would make on that, Your Honor, is that the district court was, there's been talk about this being a death penalty for Bookett. It really wasn't anything other than the district court enforcing its rules. And it looked very carefully at the situation related to these amended contentions that we're talking about here concerning the claim terms. And it looked also at another amended contention which Bookett raised related to divided infringement. And there the district court said the amendment was proper because essentially Bookett learned that information during discovery. So this was a court that was anything but abusive of discretion. It was a court that carefully considered the issues and came to the correct result. Your Honors, if there are further questions I'm happy to answer them. Otherwise I am prepared to rest on the briefs. Any more questions, Mr. Lombardi? Did it show? No. Okay, thank you. All right, we'll hear rebuttal from Mr. Cole. Thank you, Your Honor. On the question of expert reports, there's a massive bit of confusion here and that is this. With regard to the claim construction, we did offer a truly new theory. Nobody disputes that. And that theory is different than the one we're arguing about. We propose an amended contention in which third parties rather than Bank of America would satisfy the service provider element. That was rejected. We're not appealing that decision. The problem is that the court, basically, let me put this in context. At the time this was going on, Bank of America had sent us the standard letter demanding attorney fees if we don't immediately dismiss the case. In response to that, we made two points. One is we have an alternative read that we're going to seek leave to amend. That's the one where we change who satisfies the service provider limitation. In addition, however, we made clear that we still have a read under the claim construction as done because we contended what the bank did qualifies as bookings and reservations. That's this booking engine thing they're talking about. That's not a new theory because Bank of America was originally accused of being the service provider and is still accused of being the service provider. That was the theory of invention. That's what the local rules state and that's what we are pursuing. What's happened here is the confusion over the fact that we had a legitimately new theory coupled with an explanation addressing Bank of America's attorney fees threat. What's happened is those two were conflated and the district court seemed to think that they all stand or fall together with no extra analysis needed and that's just wrong. Now second, with regard to this, I'm not quite sure I understood the argument about whether this is properly before us, but we had a stipulation of non-infringement because the district court struck any attempt we could make to offer evidence to show the bank meets the service provider limitation. Under that scenario, given what happened, we had no choice but to stipulate an appeal because if we had pursued further we would have been sanctioned. And I finish your thought we need to hear your rebuttal. Oh okay. The only other point I was going to make was that if you look at appendix 6014, this is in some of the briefing on the motion to strike the expert reports. There is a chart that shows clearly the original theory coupled with the explanation of how that meets the court's claim construction, again done in response to the attorney fees threat, and then under that you'll see the truly new contention that we all acknowledge was excluded. That's appendix 6014. Okay, thank you. Any more questions for Mr. Cole? No, I'm fine. Okay, thank you. Thank you both. The case is taken under submission and that concludes this panel's argued cases for this morning. The honorable court is adjourned until tomorrow morning at 10 a.m.